Helen AMBERS, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health & Human Services, Defendant-Appellee.

No. 83–7282.

United States Court of Appeals, Eleventh Circuit.

July 19, 1984.

Lawrence F. Gardella, Legal Services Corp. of Ala., Montgomery, Ala., for plaintiff-appellant.

Calvin C. Pryor, Asst. U.S. Atty., Montgomery, Ala., for defendant-appellee.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

The interesting question on this social security appeal is whether benefits can be denied to a claimant who meets the disability listing for mental retardation but had been previously gainfully employed with that handicap. We hold that since claimant meets the listing, she is entitled to benefits regardless of the fact that she may be able to hold gainful employment as she did in the past.

Helen Ambers appeals the district court's affirmance of the denial of Social Security disability benefits, 42 U.S.C.A. §§ 416(i), 423. Having a performance I.Q. of 52, she meets the listing for mental retardation which would make her eligible for disability benefits pursuant to 20 C.F.R. § 404.1598, Appendix 1, Part A, Section 12.05 B. She is not presently engaged in gainful activity.

She had been employed previously as a domestic.

The Secretary argues that there is substantial evidence that she can return to that kind of employment. The Secretary points to a psychological evaluation and other medical evidence to show that Ambers can return to her former work as a domestic.

At the time of the decision Ambers was 43 years old. She has a sixth grade education, but is unable to read or write on even a first grade level. Ambers has worked as a domestic, a babysitter, a waitress, and as a laborer performing yard work.

Ambers' original application for benefits alleged disability due to nerves, asthma, falling out, fainting spells and high blood pressure. The following medical examinations were completed. Dr. James Parks examined Ambers on September 7, 1979. His examination revealed hypertensive cardiovascular disease and asthma. On November 3, 1980, Dr. Santiago diagnosed Ambers as having hypertensive cardiovascular disease, bronchial asthma and mental deficiency. Dr. Robert Combs examined the claimant on January 13, 1981 and found no musculoskeletal problems and reasonably good pulmonary function. There was no evidence of heart disease, significant pulmonary impairment or neurologic disease. She had an adequate G.I. and nutritional status. Dr. Combs determined that she had significant psychophysiologic symptoms. She seemed to be a hysterical personality and to have a history compatible with hyperventilatory episodes. He did not find her to be psychotic but found that she was probably mentally retarded.

On June 8, 1981, Dr. Ronald Hamby completed a psychological evaluation on Ambers. During Dr. Hamby's examination, Ambers stated that "if I answer them questions, I ain't gonna get nothing." Dr. Hamby found her to be borderline in intelligence, to have a hysterical personality, and to have a tendency to develop psychosomatic symptoms. Dr. Hamby felt that Ambers was so strongly motivated to obtain disability benefits that she would fake intelli-

gence ability. Dr. Judith Rogers, a clinical psychologist, completed the second psychological evaluation on Ambers July 29, 1981. Ambers had a full scale I.Q. of 63, which included a verbal I.Q. of 75 and a performance of I.Q. of 52.

At the hearing, Dr. Mark E. Meadows, a vocational expert, testified that except for returning to waitress work Ambers could return to her former work as a domestic and babysitter if she had the residual functional capacity for light work. Dr. Meadows testified that Ambers functional illiteracy would not preclude her former unskilled work.

The Administrative Law Judge (ALJ) found that Ambers was able to return to her former work as a domestic and found her not disabled.

■ This case presents an unusual situation in that the claimant was gainfully employed in the past with her impairments and upon cessation of gainful employment meets the Secretary's disability listing in Appendix 1, Part A, Section 12.05 B. The language of the statute states that disability means "inability to engage in any substantial gainful activity by reason of medically determinable physical or mental impairment. . . ." 42 U.S.C.A. § 423. The regulations, however, state that "[t]he Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a); 20 C.F.R. § 416.925(a). If an individual's impairment "meets the duration requirement and is listed in Appendix 1 . . . we will find (the claimant) disabled. . . ." 20 C.F.R. § 404.-1520(d); 20 C.F.R. § 416.920(d). Therefore, upon cessation of employment, the regulations support a finding of disability if one meets the listings, even though the statute relates disability to the inability to work because of the impairment.

This is an issue of first impression for this Court. Several district courts have considered disability and section 12.05 C, and one court has dealt with section 12.05 B. In *Townsend v. Heckler*, 581 F.Supp. 157 (W.D.Va.1983), plaintiff, a former coal miner, machine operator, forklift operator and general laborer, having an I.Q. of 66 and well-documented musculoskeletal impairments, established disability under the Secretary's regulations. 20 C.F.R. § 404.-1598, Appendix 1, Part A, Section 12.05 C. The district court held judgment for the claimant reversing the decision of the Secretary and remanding for benefits to claimant. 581 F.Supp. at 159.

In *Wright v. Schweiker*, 556 F.Supp. 468 (M.D.Tenn.1983), a claimant, a former taxicab driver, having an I.Q. of 66 and physical impairments that limit him to medium or lesser work met the section 12.05 C listing of impairments. The court held that "[h]aving met the Secretary's standards for a listed impairment, no further considerations of . . . vocational factors need be made prior to a finding of disability." 556 F.Supp. at 476.

Section 12.05 B was addressed in *Nalley v. Schweiker*, 575 F.Supp. 840 (W.D.Ky. 1983). In *Nalley*, the district court reversed the Secretary's determination of nondisability and remanded for an award of benefits pursuant to section 12.05B where Mary E. Nalley had a verbal I.Q. of 59 on the W.A.I.S. The Court held that Nalley met "the listed impairment and should be found disabled." 575 F.Supp. at 843. Nalley had worked as a motel maid, laundress and babysitter.

■ This Court has held the regulations require a sequential analysis that must be followed when evaluating a disability claim. When a claimant is not engaged in substantial gainful activity, the Secretary must determine whether claimant suffers from an impairment "that significantly limits the claimants physical or mental capacity to perform basic work-related activities." *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir. Unit A 1981).

Social Security disability claims are evaluated in terms of: (1) whether a claimant is gainfully employed; (2) whether claimant's impairment meets the listing of impairments; (3) whether claimant can return to

former work; and (4) whether claimant is disabled in light of age, education, and residual functional capacity. 20 C.F.R. § 404.1520. If a person is found disabled or not disabled at any point in the review, in accordance with the above delineated steps, no further review is conducted. 20 C.F.R. § 404.1520. If the claimant meets the listed impairment in Appendix 1, the claimant is determined disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ found that Ambers' hypertensive cardiovascular disease and her asthma problems were insufficient for disability. This finding is clearly in keeping with the record medical evidence.

 As to mental retardation, the ALJ used the full scale I.Q. score of 63. The ALJ incorrectly applied the Secretary's own regulation. In connection with mental disorders listed under section 12.00, section 12.00 B 4 requires utilization of the lowest score when multiple score tests, such as the W.A.I.S., are administered. The lowest score for Ambers was a performance I.Q. of 52, not the score of 63 used by the ALJ. The verbal I.Q. score of 75 was properly disregarded. The Secretary has misapplied her own regulation. *Cf. Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir.1982).

The Secretary should have used the lowest I.Q. score pursuant to section 12.00 B 4, the performance I.Q. score of 52. The claimant thus meets the listed impairment of section 12.05 B.

Although unnecessary to the determination of disability, it does not appear that the ALJ considered Ambers' other psychological impairments. *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir.1982). She has been diagnosed as having a hysterical personality and a history compatible with hyperventilatory episodes. The ALJ made no findings on these, other than to restate the physicians' diagnoses of these impairments.

Consideration of the fact that Ambers could return to her past work is not a relevant inquiry once she met the Listing of Impairments in Appendix 1.

REVERSED AND REMANDED.