Ronda VAUGHN, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Civil Action No. 05–G–1395–NW.

United States District Court, N.D. Alabama, Northwestern Division.

May 10, 2007.

Douglas A. Wright, Douglas A. Wright PC, Florence, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Deanna L. Sokolski, Natalie Jemison, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Ronda Vaughn, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations

outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. *Id.*

In the instant case, ALJ Robert L. Hodges determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe," she did not suffer from a listed impairment. The ALJ found the plaintiff able to perform her past relevant work as a housekeeper, security guard, food preparation worker and production machine operator. [R. 26].

## DISCUSSION

■ The plaintiff alleges that she is disabled under Listing 12.05C, which requires that the claimant have a "valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and signif-

icant work-related limitation of function." *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir.1993)(quoting Listing 12.05C). When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. *Davis* 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in *Edwards by Edwards v. Heckler*:

An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir.1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

■ In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing

12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The diagnostic description in the introductory paragraph to Listing 12.00 defines mental retardation:

"Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

Listings 12.05. This imposes three requirements: 1) Significant subaverage general intellectual functioning; 2) deficits in adaptive functioning; and 3) the deficits must be manifested before age 22. *See Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir.1997)("To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior;[1] and (3) have manifested deficits in adaptive behavior before age 22."). In this circuit, it is presumed that a persons I.Q. remains fairly constant throughout her life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. *Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir.2001). The *Hodges* court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met. *Hodges,* 276 F.3d at 1269.

The language of 12.05 closely tracks the DSM–IV–TR definition of mental retardation. The phrase "significantly subaverage general intellectual functioning" is also used in the DSM definition of Mental Retardation. The DSM states that "general intellectual functioning" is defined by the intelligence quotient (IQ or IQ equivalent). DSM–IV–TR at 41. The DSM also defines "significantly subaverage intellectual functioning." "Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below...." DSM–IV–TR at 41 Therefore, a valid IQ score of 70 or below satisfies the first requirement of the diagnostic description.

The ALJ found that "the claimant has a valid IQ score of 70...." [R. 25]. Accordingly, the plaintiff has met the first prong of 12.05C.

The second requirement of the diagnostic description of Listing 12.05 is the presence of "deficits in adaptive functioning." This also is a requirement of the DSM: "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning." DSM–IV–TR at 42.

The ALJ found that the records "do not otherwise indicate that she has another physical or mental impairment imposing additional and significant work-related limitation of function absent noncompliance with her mental health treatment regimen." [R. 25]. This finding is not supported by substantial evidence. The ALJ correctly found that the plaintiff "has the following medically determined severe impairments: scoliosis of the cervical spine, a generalized anxiety disorder, a depressive disorder not otherwise speci-

---

1. The 1992 version of Listing 12.05(C) referred to "adaptive behavior" rather than "adaptive functioning."

fied, [and] a personality disorder" in addition to her borderline intellectual functioning. [R. 21]. The plaintiff testified that she was homeless [R. 429], and that she did not have money to obtain her prescribed medications [R. 432]. Poverty excuses noncompliance with prescribed treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir.1988).

■ The ALJ also found that the "evidence does not indicate that the claimant has a history of mental retardation" [R. 22] and that "the records in evidence do not indicate that the claimant has deficits in adaptive behavior initially manifested during the developmental period prior to age 22 as shown by her longitudinal history." [R.25]. This finding is contrary to the record and is not supported by substantial evidence. The plaintiff's school records clearly indicate that she was in special education because of mental retardation. [R. 125, 127 and 202]. Moreover, on February 24, 2004, clinical psychologist James E. Crowder, Ph.D., concluded after testing that the plaintiff reads on a fourth grade level, and performs arithmetic[2] on a second grade level. [R. 404]. It is clear to this court that the plaintiff's deficits in adaptive functioning began in her formative years and continue to this day.

■ The ALJ apparently based his decision upon the plaintiff's ability to perform her past relevant work even though she met the requirements of Listing 12.05C. However, once a claimant is found to suffer from a Listed impairment, vocational factors are irrelevant. *Ambers v. Heckler*, 736 F.2d 1467 (11th Cir.1984)(fact that claimant could return to her past work held irrelevant once she met one of the Listings). Therefore, the ALJ misapplied the law in determining that the plaintiff was not disabled.

**CONCLUSION**

The plaintiff has met all the requirements of Listing 12.05C. She is, therefore, disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

**FINAL ORDER**

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration.

---

**2.** The plaintiff testified that she cannot make change. [R. 444].

*This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*