Virgie **JONES**

v.

Richard S. **SCHWEIKER**, Secretary, Department of Health and Human Services.

Civ. No. R–82–249.

United States District Court, D. Maryland.

Sept. 15, 1982.

Myrna A. Butkovitz, The Legal Aid Bureau, Inc., Baltimore, Md., for plaintiff.

Glenda G. Gordon, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

RAMSEY, District Judge.

This case was commenced by a complaint, filed by counsel on January 28, 1982, in which the plaintiff invoked this Court's jurisdiction pursuant to 42 U.S.C. 405(g) (1976, as amended), seeking judicial review of the defendant's final decision denying her entitlement to Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.[1] The defendant has furnished a copy of the administrative transcript, and the parties have filed cross motions for summary judgment, as to which

no hearing is necessary. Local Rule 6. *See Myers v. Califano,* 611 F.2d 980 (4th Cir. 1980).

The plaintiff filed her application for SSI on January 6, 1981. (Tr. 95–98).[2] After administrative denials, plaintiff sought and was granted a hearing before an administrative law judge (ALJ) of the defendant's department. Plaintiff appeared at the hearing, held June 11, 1981, represented by counsel. She testified, as did her live-in friend and former business partner. On August 26, 1981, the ALJ issued his decision, finding that plaintiff was not disabled. (Tr. 11–15). The Appeals Council affirmed the ALJ's decision on December 7, 1981, thus making it the final, reviewable decision of the defendant. (Tr. 3–4). Suit for judicial review was timely filed in this Court.

The ALJ based his denial of benefits on his finding that the plaintiff was not suffering from a "severe impairment." (Tr. 15, finding 4). In the sequential evaluation of disability set up in the defendant's regulations, the determination of whether the claimant suffers from a severe impairment is one of the first steps. 20 C.F.R. § 416.920 (1982). The regulatory standards used in determining severity are not equivalent solely to medical gradations of severity; rather, the regulatory standards are medical-vocational:

> (c) *You must have a severe impairment.* If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 CFR § 416.920(c) (1982).

Thus, the evaluation called for in the cited portion of the defendant's regulations is an objective, rather than a subjective, evalua-

---

1. It appears that plaintiff previously filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (Tr. 84–87), but that that claim was not before the Secretary in the instant case, having previously been denied without a hearing. (Tr. 32–33).

2. References are to the transcript of administrative proceedings filed with defendant's answer.

tion of the impact of the claimant's physical impairment upon his or her ability to perform "basic work activities." If that impact is "significant," the impairment is a severe one for the purposes of the SSI disability regulations. Although the regulations do not define the term "significant," they do define "basic work activities," as follows:

> (b) When we talk about basic work activities, we mean the abilities and aptitude necessary to do most jobs. Examples of these include—
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 CFR § 416.921(b) (1982).

In the instant case, plaintiff complains only that she is impaired in her physical functions because of her arthritis and its attendant pain. Thus, only the functional limitations spoken of in subsection (b)(1) of 20 CFR § 416.921 need be taken into account.

█ It is clear that, in reviewing an administrative determination that a claimant's disability is not severe, this Court must apply the substantial evidence test, as is true of the more usual Social Security case in which the impairment is found severe, but the issue is residual functional and vocational capacity for substantial gainful activity. *Lofton v. Schweiker*, 653 F.2d 215, 217 (5th Cir.), *cert. denied*, 454 U.S. 1089, 102 S.Ct. 651, 70 L.Ed.2d 626 (1981). The substantial evidence test is, of course, a familiar one, requiring that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance. *Blalock v. Richardson*, 483 F.2d 773, 775–76 (4th Cir.1972).

The evidence before the ALJ consisted of clinical medical records, the reports of two consulting orthopedic surgeons, and the hearing testimony of plaintiff and her live-in friend. It is evident that the ALJ considered the consultants' reports to be important evidence on the issue of severity of impairment. (Tr. 13–14). Dr. Borden reported the following diagnostic impressions: chronic low back strain; mild scoliosis; and mild osteoarthritis. (Tr. 139). His narrative finding was as follows:

> This patient would probably be helped by a low back support and mild analgesics, some weight loss [sic]. She should not engage in heavy repetitive bending, lifting and carrying. Constant squatting should also be avoided. (Tr. 139).

The second orthopedic surgeon, Dr. Honick, reported the following impressions and recommendations:

IMPRESSION:

> This patient has obviously diffuse type of arthritis with more subjective rather than objective findings, although she appears to have a considerable degree of tenosynovitis of both hands in the region of the abductor tendon of the thumb (de Quervain's disease).

RECOMMENDATIONS:

> I feel that if not already performed, the patient should have a complete arthritic workup. I feel that perhaps the use of Indocin or steroids rather than the slow acting Motrin would give her some benefit. I feel that with some symptomatic relief, this patient could return to some tupe [sic] of duty not requiring forceful use of the hands or prolonged weight bearing. (Tr. 142).

The testimony of the plaintiff established that she was 58 years old at the time of the hearing. She was born and raised in rural southern Maryland, and attended only the first grade. She is illiterate. She has a work history of menial labor, mostly as a domestic worker. In the 1970's, plaintiff and her friend, Mr. Berry, were in the tavern business together. It appears that Mr. Berry, who is now plaintiff's live-in com-

panion, either lent or gave plaintiff the money to start a marginal tavern operation in Baltimore City. It appears from the testimony that plaintiff's actual job at the bar was mostly menial labor, with Mr. Berry doing the hiring, the firing, the ordering, and the other general management chores. Plaintiff cleaned the bar and carried beer and liquor from the cold storage room into the bar. The tavern closed down after its rented premises were repeatedly burgled, and the owners could no longer afford to restock it. Plaintiff testified that she suffers pain, swelling, and weakness from her arthritis, and that it interferes with her social and domestic activities. (Tr. 35–81 *passim*). She testified that the weakness in her hands and arms caused her to drop an expensive plate when she last tried to work as a domestic. (Tr. 59–60).

■ Based upon its independent review of the record, this Court is of the opinion that the ALJ's decision was not supported by substantial evidence. As noted *ante,* the only issue is whether plaintiff suffers from a severe impairment. There was medical evidence that plaintiff's impairment limited her physical ability to perform basic work related functions, as defined in 20 CFR § 416.921(b)(1) (1982). Dr. Borden found plaintiff precluded from engaging in "heavy repetitive bending, lifting, and carrying," as well as "constant squatting." (Tr. 139). Dr. Honick found plaintiff precluded (even assuming that she had some symptomatic relief) from duties "requiring forceful use of the hands or prolonged weight bearing." (Tr. 142). There was also testimonial evidence of limitations on plaintiff's physical ability to perform most housework, in addition to her physical inability to perform domestic service on the last occasion she tried to be gainfully employed.

In view of the uncontroverted evidence of plaintiff's physical limitations from arthritis and its associated pain, the ALJ's decision could stand only if there were substantial evidence that these limitations were not *significant.* 20 CFR §§ 416.920(c), 416.921 (1982). Unfortunately, the Secretary's reg-

ulations do not define the term "significant." Therefore, the Court must give the word its commonly accepted meanings, among which are, according to *Webster's Dictionary* (2d International Unabridged Ed. 1948), "having a meaning" and "deserving to be considered." The antonym of "significant" is given in the dictionary as "meaningless." Certainly, the plaintiff's physical limitations, as related to basic work activities, are not meaningless; they are "deserving to be considered." Therefore, the ALJ erred in viewing severity of impairment solely as a medical issue, as he apparently did, rather than adhering to the regulatory scheme, in which severity is defined in terms of significant functional limitation. *Cf. Rodriquez v. Schweiker,* 523 F.Supp. 1240, 1243 (E.D.Pa.1981).

■ In that the ALJ's determination was erroneous, the Court must decide whether this case should be remanded or whether the administrative decision should be reversed without a remand. Under both the statute (42 U.S.C. § 405(g)) and the case law, *see, e.g., Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir.1975), remand may be ordered by the Court for good cause shown. Ordinarily, a good faith error in the evaluation of evidence, such as the one in this case, would constitute grounds for remanding the case for further administrative proceedings. *Taylor v. Weinberger.* However, it has been held that where there is no likelihood that substantial evidence could be adduced on remand to support a denial of benefits, the appropriate remedy is to reverse the erroneous decision, without remand. *Breeden v. Weinberger,* 493 F.2d 1002, 1012 (4th Cir.1974).

■ In the present case, it is apparent that the plaintiff suffers from a severe impairment and is thereby precluded from doing her past heavy work as factotum in a tavern or domestic worker in a private home. Thus, the Secretary would have to come forward with evidence of alternative employment on remand. *Taylor v. Weinberger.* In this case, the Medical-Vocational guidelines ("grid rules") of 20 CFR Part 404, Subpart P, App. 2 (1982) would be.

applied to determine eligibility for benefits. 20 CFR § 416.969 (1982); *Frady v. Harris,* 646 F.2d 143 (4th Cir.1981). There would appear to be no issue of fact as to the grid rule factors of age, education, and work experience. That is, plaintiff is of advanced age, of limited or less education, and has an unskilled work history. Thus, whether she would be determined on remand to have the residual functional capacity to perform sedentary work or light work, she would be found disabled under the applicable grid rules. 20 CFR Part 404, Subpart P, App. 2, Rules 201.01 and 202.01. Even if she were found to have the residual capacity for medium work (a doubtful finding under the evidence discussed *ante*), plaintiff's marginal education, her age, her long history of only arduous unskilled labor, and her inability to perform this labor presently would combine to render her disabled under the regulations accompanying the grid rules. *Id.* at § 203.00(b).

Therefore, in that there is no good cause to remand this case to the defendant for further proceedings, *see Tyler v. Weinberger,* 409 F.Supp. 776, 788 (E.D.Va.1976), a judgment will be entered separately granting summary judgment in favor of the plaintiff.